# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1-12-CR-00009 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER DENYING DEFENDANT YE'S MOTION FOR JUDGMENT OF ACQUITTAL OR, ALTERNATIVELY, NEW TRIAL |
| v. | |
| ZHENYAN CHENG and AIFANG YE, | |
| Defendants. | |

Defendants Zhenyan Cheng and Aifang Ye were jointly tried on one count of conspiracy to make a false statement in a passport application, in violation of 18 U.S.C. § 371, and one count of making a false statement in a passport application, in violation of 18 U.S.C. § 1542. On June 15, 2012, the jury returned a verdict of not guilty on both counts as to Cheng, and guilty on both counts as to Ye. Before the Court is Aifang Ye's motion for a judgment of acquittal or, alternatively, for a new trial, brought pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. ("MJOA," ECF No. 70.) The Court has considered the parties' written submissions –Aifang Ye's supporting memorandum (ECF No. 72), the government's opposition brief (ECF No. 74), and Aifang Ye's amended reply (ECF No. 78), as well argument made at a hearing on August 9, 2012. The motion is denied for the reasons set forth below.

# I. BACKGROUND

In September 2011, Aifang Ye ("Ye") and her husband, Xigao Cheng ("Xigao"), both Chinese nationals, traveled to the Commonwealth of the Northern Mariana Islands ("CNMI") from China on tourist visas. At the time, Ye was pregnant with the couple's second child. Xigao went back to China after a few days. Ye, however, remained on Saipan. She overstayed her advance parole and, on February 28, 2012, gave birth to a girl, whom she named Jessie. Any person born on United States territory automatically acquires United States citizenship. That made Jessie an American citizen, with a right to a United States passport.

A couple may obtain a passport for a minor under age 16 if both parents apply at the passport office in person. The passport application may be executed by just one of the parents, however, so long as he or she shows a notarized statement or affidavit from the non-applying parent consenting to the issuance of a passport.[1] Ye wanted to get a passport for Jessie before they returned home. Xigao, however, was back in China and could not travel to Saipan. Ye did not try to obtain a notarized statement from Xigao, ostensibly out of concern it might cause them problems with the Chinese authorities for having had more than one child. Instead, on the advice of Kaiqi Lin ("Lin"), a translator who was assisting Ye, she arranged for her brother-in-law, co-defendant Zhenyan Cheng ("Zhenyan"), to bring Xigao's passport to Saipan and go with her to the passport office to sign the father's name on the application.

Zhenyan had a prior experience with the United States passport office. His own wife had given birth to a daughter on Saipan and applied for a United States passport for the infant. Zhenyan had provided his wife with a power of attorney, and his wife obtained a passport.

---

[1] The regulations are found at 22 C.F.R. § 51.28(a). Excerpts were included in the jury instructions (ECF No. 60, Instruction 17). There are provisions for application by a single parent who has sole custody of the child, but they are not pertinent to the facts of this case.

In this case, Zhenyan arrived in Saipan on March 28, 2012. The next day, March 29, he went with Ye and Lin to the passport office. There, Zhenyan showed the passport agent his brother's passport and signed his brother's name on the line where the child's father was supposed to sign. He carried with him an unnotorized power of attorney from Xigao, but never showed it to the agent. He never showed his own passport, either, or let the agent know he was not Jessie's father.

Ye and Zhenyan came under the eye of federal investigators by happenstance. In an unrelated investigation, two agents of the Department of Homeland Security ("DHS") had Lin's white Nissan Sentra under surveillance that morning. After the visit to the passport office, Lin returned Ye and Zhenyan to their hotel. One agent contacted Ye and Zhenyan in the lobby; the other approached Lin, who was parked on the street in front of the hotel. On the front passenger seat were two Chinese passports. One passport belonged to Ye, and an inspection of the document showed that she was an overstayer. The other passport belonged to Xigao Cheng, who was not present. The investigation of these circumstances led the agents to the passport office and, ultimately, to the bringing of charges in this case.

Evidence admitted at trial included the passports of Ye, Zhenyan, and Xigao; the passport application for Jessie; photographs of the passport office and of Ye and Zhenyan walking from Lin's car to the hotel; DHS arrival and departure information for Ye and Zhenyan; and statements that Ye and Zhenyan made to DHS investigators. The jury heard testimony from DHS agents Michael D. Lansangan and Ryan K. Faulkner, and from passport office agent Magdalena Naputi.

//

## II.     LEGAL STANDARD

Within fourteen days after a guilty verdict, a defendant may move the court to set aside the verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29(c). On a Rule 29 motion, the relevant inquiry is whether, "viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Alston,* 974 F.2d 1206, 1210 (9th Cir. 1992).

A defendant may ask the court to "vacate a judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new-trial motion on grounds other than newly discovered evidence must be filed within fourteen days of the guilty verdict. Fed. R. Crim. P. 35(b)(2).

## III.     DISCUSSION

A.     <u>The Conspiracy Conviction</u>

A conspiracy is "an agreement between two or more people to commit an unlawful act." *United States v. Yarbrough,* 852 F.2d 1522, 1542 (9th Cir. 1988). Conspiracy "requires some form of a 'meeting of the minds.'" *Id.* (internal citation omitted). The existence of an agreement may be inferred if there is "concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." *Id.* (quoting *United States v. Melchor-Lopez,* 627 F.2d 886, 890 (9th Cir. 1980). To sustain Ye's conviction for conspiracy, there must be sufficient evidence that (1) there was an agreement between her and one other person to make a false statement on a passport application, (2) she knew that this was an object of the conspiracy when she joined it, and (3) a member of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy. The jury found the overt act to be that Ye and Zhenyan went to the Saipan passport office, where they signed and submitted a passport

application on behalf of a minor child, with Zhenyan posing as the child's father. (Verdict Form, ECF No. 67.)

Ye asserts that there was insufficient evidence of an agreement. First, she argues that the evidence of unlawful activity was insufficient to support an inference of an agreement. An unlawful agreement may be inferred solely from circumstantial evidence. *See United States v. Ching Tang Lo,* 447 F.3d 1212, 1226 (9th Cir. 2006); *United States v. Abushi,* 682 F.2d 1289, 1293 (9th Cir. 1982). However, "guilt by association" is not sufficient to sustain a conspiracy conviction. *United States v. Melcho-Lopez,* 627 F.2d 886, 891 (9th Cir. 1980). An inference of an agreement "is permissible only when the nature of the acts would logically require coordination and planning." *United States v. Garcia,* 151 F.3d 1243, 1245 (9th Cir. 1998).

Here, an inference of an agreement is warranted by the nature of the acts and is amply supported by the evidence. To secure a passport for the baby, both parents had to sign the passport application at the passport office. The mother signed; the father did not. Instead, the baby's uncle, Zhenyan, impersonated the father. It is hard to imagine how Zhenyan could have undertaken this fraud on his own, and not at the instigation of one or both parents. The testimony, including written statements of both defendants, and the documents admitted into evidence showed that Zhenyan brought his brother's passport with him when he traveled from China to Saipan, and that he went with Ye to the passport office where he signed his brother's name on the infant's passport application.

Second, Ye contends that her own statement and Zhenyan's statement to investigators, which were admitted into evidence, undercut the necessary inference of a "meeting of the minds." She maintains that the while her own statement shows that she was ready to do whatever she could to obtain a passport for her child, it does not prove she knew that having

another person sign for her husband was illegal. Morever, she asserts that Zhenyan's statement shows he did not know that it would be a crime to sign for his brother.

In her statement to investigators, Ye said that she hired a person named Kaiqi Lin to assist her with translation and document services. He told her that there were several ways she can apply for the U.S. passport. He told her that as long as she has the father's passport, she can find someone who looks like her husband and have him come to the passport office. He also told her that she can get a notarized letter from her husband. She admitted at the end of the statement, "I know that what I did was wrong." That is clearly enough evidence from which a rational jury might find that Ye had knowledge her acts were unlawful.

As for Zhenyan, he admitted to investigators that he knew about the requirement of a power of attorney, because of his prior experience securing a passport for his own daughter. He admitted that he brought Xigao's passport with him from China and presented it to the passport agent. He said he thought the passport agent would recognize from the photograph that he was not Xigao, but he never told the agent he was not Xigao and did not present his own identification. He admitted he signed Xigao's name on the application in English and Chinese, but that he did not realize how serious a matter this was.

These statements and the surrounding circumstances provide more than sufficient evidence for a rational trier of fact to infer that Ye and Zhenyan had an agreement – a "meeting of the minds" – for Zhenyan to impersonate the child's father. A reasonable juror might have inferred from the undisputed facts – that Zhenyan had prior experience of presenting a power of attorney when applying for his own daughter's passport, that he never showed the agent the power of attorney from Xigao, and that he never identified himself to the agent – that Zhenyan's denial of knowledge he was breaking the law was not credible.

It might be supposed that the jury's acquittal of Zhenyan on the conspiracy charge means that it must not have believed there was an agreement. Jury verdicts, however, are not required to be consistent, "even when a conviction is rationally incompatible with an acquittal." *United States v. Brandon,* 633 F.2d 773, 779 (9th Cir. 1980). Inconsistent verdicts may result from "jury lenity" toward one co-defendant, notwithstanding the court's instruction that the jury base its verdict solely on its determination of the facts. *See United States v. Powell,* 469 U.S. 57, 65–66 (1984). For that reason, "the acquittal of all conspirators but one does not necessarily indicate that the jury found no agreement to act." *United States v. Valles-Valencia,* 823 F.2d 381 (9th Cir. 1987); *see also Ching Tang Lo,* 447 F.3d at 1226 ("It is well established that a person may be convicted of conspiring with a co-defendant even when the jury acquits that co-defendant of conspiracy.").

Third, Ye asserts that the mere family tie between herself and Zhenyan is not enough to support the finding of a conspiracy. She points to case law holding that membership of co-defendants in the same gang does not lead to an inference of agreement. *See Garcia,* 151 F.3d at 1245. Here, however, the familial relationship does not stand in isolation. Ye's husband, Xigao, paid for Zhenyan's ticket to Saipan and gave Zhenyan his passport. Even if Zhenyan and Xigao were not brothers or otherwise related to one another, those facts alone are sufficient to raise an inference that Zhenyan had agreed to assist Xigao and Ye in some way. It is possible, as Ye suggests, that Zhenyan and Ye did not have a similar understanding at the outset at least. But on a motion for judgment of acquittal, the facts must be viewed in the light most favorable to the government, not the light most favorable to the defendant.

Fourth, Ye contends that the evidence was insufficient to prove that she had the necessary specific intent to do something the law forbids. She focuses on the paucity of evidence that she

signed an oath to be truthful on the passport application. The passport application includes an oath under penalty of perjury that the applicant is giving truthful information. (*See* Gov't Ex. 10.) Also, the passport office displayed a sign titled "Passport Oath" and containing an oath that the application statements are truthful and the attached photograph is a true likeness. (*See* Gov't Ex. 17.) The application and sign are in English. Ye does not know English; she speaks Mandarin. Lin, the translator who accompanied Ye and Zhenyan to the passport office, was not called to the stand. However, passport office agent Naputi testified that she saw Ye, Lin, and a man she understood to be Jessie's father together at the passport office, and that she instructed Lin to translate the oath to them twice.

If the government bore a burden to prove that the false statements were *sworn* statements, the lack of testimony from Lin as to what he actually told Ye might be problematic. But the government does not bear such a burden. The statute, 18 U.S.C. § 1542, does not require an oath. Specific intent may be proved through other evidence. The jury heard Ye's admission that Lin had told her that bringing her husband's passport in from China was a criminal act. She also admitted that Lin told her to find someone who looked like the baby's father to come to the passport office with them. This is sufficient to prove specific intent.

Finally, Ye maintains that it would be a manifest injustice to allow her to stand convicted of these crimes while Zhenyan, the person who made the false statement, goes free. Therefore, she asks for a new trial pursuant to Rule 33. Ye concedes that inconsistent verdicts are permissible. (ECF No. 72 at 19–20.) As explained earlier, the inconsistency may be a result of "jury lenity," which is allowed. That is, the jury may have determined that Ye was the more culpable of the two as the instigator of this scheme for the benefit of her daughter. In any event, the question on a motion for a new trial is not whether the jury's verdict was unjust, but whether

the process was unjust. The type of alleged injustice that Ye supposes occurred here could not be righted by a new trial, the remedy under Rule 33, because Zhenyan cannot be retried with her and put in jeopardy of his liberty a second time. If after a flawless second trial setting forth the identical evidence the second jury also found Ye guilty, the court would be compelled to grant yet another trial, and another – until the jury got it "right." That is not what Rule 33 envisions. A new trial is not warranted.

### B. The False Statement Conviction (Aiding and Abetting)

In addition to the conspiracy conviction, Ye was found guilty of making a false statement on a passport application. The person who made the false statement was, of course, Zhenyan. However, a person who aids and abets another to break the law is likewise guilty of the underlying offense. *See* 18 U.S.C. § 2 (whoever "aids, abets, counsels, commands, induces or procures" the commission of an offense "is punishable as a principal"); *United States v. Mann,* 811 F.2d 495, 497 (9th Cir. 1987). Aiding and abetting has four elements: "(1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense." *Garcia,* 400 F.3d at 818 n.2.

Ye argues that because the jury found Zhenyan not guilty of making a false statement, Ye cannot be guilty of that crime. Inconsistent verdicts as to aiding and abetting are permissible, just as they are in regards to conspiracy verdicts. *See Standefer v. United States,* 447 U.S. 10, 22 n.16 (1980) ("Nothing in the . . . Due Process Clause forecloses putting petitioner on trial as an aider and abettor simply because another jury has determined that his principal was not guilty of the offenses charged."); *United States v. Stozek,* 783 F.2d 891, 894 (9th Cir. 1986) (reversal not

warranted where conviction on one count of indictment incompatible with acquittal on another court).  Inconsistent verdicts do not require reversal "unless there is insufficient evidence to sustain the guilty verdict." *United States v. Van Brandy,* 726 F.2d 548, 552 (9th Cir. 1984).

Here, there was sufficient evidence to show that Zhenyan willingly and knowingly made a false statement on a passport application, and that Ye aided, induced, or procured him to do so. Ye learned from Lin that she could obtain a passport for her daughter if she could hire someone to impersonate the girl's father, Xigao.  Soon after that, Xigao purchased a ticket for Zhenyan to fly to Saipan.  The next day, Ye accompanied Zhenyan and Lin to the passport office.  From these facts, the jury could reasonably conclude that Ye aided and abetted Zhenyan.

### IV.  CONCLUSION

For the foregoing reasons, Aifang Ye's motion for judgment of acquittal or, alternatively, a new trial is DENIED.

SO ORDERED this 1st day of October, 2012.

_____
RAMONA V. MANGLONA
Chief Judge